**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SHIH-YI LI,**

      **Plaintiff,**

v.                                                      **Case No:   6:19-cv-1249-Orl-31EJK**

**ROGER HOLLER CHEVROLET CO.,**
**AUDI NORTH ORLANDO, CLASSIC**
**HONDA, CLASSIC MAZDA, MAZDA**
**LAKELAND, HOLLER HYUNDAI,**
**GENESIS NORTH ORLANDO,**
**DRIVER'S MART WINTER PARK and**
**DRIVER'S MART SANFORD,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court on Defendants' Motion to Compel Arbitration and to Dismiss (the "Motion") (Doc. 29), filed December 4, 2019. Therein, Defendants move to compel arbitration of Plaintiff's claims and to dismiss all Defendants except Roger Holler Chevrolet Co. ("Holler Chevrolet") from this action. (*Id*.) Plaintiff, Shih-Yi Li, a.k.a Arthur Li, responded in opposition on December 20, 2019 (Doc. 34), and the undersigned conducted an evidentiary hearing on February 19, 2019 (Doc. 45). The Motion is now ripe for review. Based on the briefing, the evidence presented at the evidentiary hearing, and the allegations set forth in the Amended Complaint (Doc. 28), I respectfully recommend that the Motion be granted.

**I.     BACKGROUND**

This case arises from Plaintiff's employment by Holler Honda,[1] and subsequently, Holler Chevrolet d/b/a Holler Driver's Mart. (Am. Compl., Doc. 28, ¶ 31.) Plaintiff desired to work for Holler Honda, so he applied for a car salesman position via an electronic "Application for Employment." (Defs. Ex. 1, Doc. 47-1 at 1–6.) The Application for Employment includes an "Applicant Statement and Agreement," which contains the arbitration provision at issue. It provides, in pertinent part:

> I also acknowledge that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. **Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy . . . which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connections whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . shall be submitted to and determined exclusively by binding arbitration . . . .** Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3–4 ), even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, a court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceedings despite any state law provision to the contrary. I UNDERSTAND BY

---

[1] As Defendants point out in their Motion, there is some confusion as to whether Plaintiff has named Holler Honda as a defendant in this action. (Doc. 29 at 1, n.1.) In the Amended Complaint, Plaintiff does not name Holler Honda in the case caption or the opening paragraph where he lists all Defendants. (Doc. 28 at 1.) However, throughout the Amended Complaint, Li refers to Holler Honda as a Defendant. (*Id.*, *passim*). In any event, because Plaintiff did not clarify in his response or at the hearing whether he intends to sue Holler Honda, for the purposes of this R&R, the undersigned assumes Holler Honda is not a defendant in this action.

> AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.

(*Id.* at 5) (bolded emphasis added).

Holler Honda ultimately hired Plaintiff as a car salesman on September 9, 2013. (Doc. 28, ¶ 34.) Plaintiff worked at Holler Honda until December 2014. (*Id.* ¶¶ 34–35.) On February 4, 2015, Li interviewed with Phil Collins and Patrick Pimentel, the General Manager and Sales Manager, respectively, of Holler Driver's Mart; Li executed a separate Employment Agreement with "Holler Driver's Mart" that day. (Doc. 28, ¶ 37; Pl. Ex. 3, Doc. 46-2 at 67–69.) The Employment Agreement did not include an arbitration agreement.[2] Instead, the Employment Agreement provided that the parties consented "to the exclusive and personal jurisdiction of the federal or state courts located in Orange County, Florida." (Pl. Ex. 3, Doc. 46-2 at 69.)

After starting work at Holler Chevrolet, Plaintiff complained that Holler Chevrolet was committing fraud on the public by falsely advertising and advising customers that the salespersons were not paid on a commission basis. (Doc. 28, ¶ 40.) Plaintiff also complained that Holler Chevrolet would "bait and switch" customers by luring potential customers with advertisements of automobiles that were not actually in its inventory. (*Id.* ¶ 41.) Holler Chevrolet would then "convince" the customers to purchase different vehicles when they came to purchase the advertised vehicles. (*Id.* ¶ 41.) On November 8, 2018, Li made a written request for a medical leave of absence from November 20 to December 10, 2018. (*Id.* ¶ 42.) Holler Chevrolet did not respond to the request and subsequently terminated Li's employment in November 2018. (*Id.* ¶¶ 44–45.)

On July 19, 2019, Plaintiff instituted this putative collective action against Defendants for unpaid wages under the minimum wage provision of the Fair Labor Standards Act ("FLSA"), 29

---

[2] The parties do not contest this fact.

U.S.C. §§ 201–219, and Article 10, Section 24 of the Florida Constitution, as well as on his own behalf against Holler Chevrolet for retaliation under the Florida Whistleblower Act, Fla. Stat. § 448.102, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2645.

## II. DISCUSSION

### A. Motion to Compel Arbitration

Defendants move to compel Plaintiff to arbitration. Plaintiff does not dispute that he electronically signed the Applicant Statement and Agreement containing the arbitration provision on August 20, 2013. (Doc. 34 at 5.)[3] Instead he puts forth the following two arguments against compelling arbitration: (1) Neither Holler Chevrolet nor any of the other Defendants were signatories to the arbitration agreement, and therefore, Plaintiff cannot be compelled to arbitration with them; and (2) even if Plaintiff did sign an arbitration agreement that is enforceable by them, Holler Honda terminated his employment, which terminated the arbitration agreement. (*Id.* at 2.)

#### 1. Holler Chevrolet may invoke the arbitration provision as a non-signatory.

It is well established that parties may contract to settle potential disputes by arbitration and that such agreements are favored. *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009); 9 U.S.C. § 2. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). In general, federal courts liberally enforce the right to arbitrate, and therefore, any doubt about whether a dispute is arbitrable should be resolved in favor of arbitration. *Id.* at 650. When a party challenges arbitrability, the court must undertake a two-step analysis: first, it must determine whether the parties agreed to arbitrate that dispute, and if so, it must

---

[3] While Plaintiff disputed the authenticity of this document in his response in opposition to the Motion to Compel (Doc. 34 at 1, n.1), Plaintiff did not refute its authenticity or introduce contrary evidence at the hearing.

determine whether external legal constraints foreclose arbitration of those claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985).

Holler Chevrolet was not a signatory to the arbitration provision. Rather, the arbitration provision in the Application for Employment was between Plaintiff and Holler Honda. A plain reading of the Application for Employment supports Plaintiff's argument. The only place where "Company" is otherwise "defined" is at the beginning of the Application for Employment, where "Company name" is listed as "Holler Honda." (Defs. Ex. 1, Doc. 47-1 at 1.) Frank Hamner, the General Counsel of Holler Classic Automotive Group ("Holler Classic"), also testified that the term "Company" is not explicitly defined in either the Employment Agreement or Applicant Statement and Agreement.

Mr. Hamner's testimony revealed that "Holler Honda" was either auto-populated based on Plaintiff's selecting that as the dealership where he wanted to work or was keyed in by Plaintiff himself. He also testified that Holler Classic has a number of dealerships under its umbrella of ownership, including Holler Chevrolet and Holler Honda. It was his understanding and intention that the term "Company" applied to all of the dealerships under the ownership of Holler Classic. In support of this, Mr. Hamner referred to the numerous onboarding documents which were presented to and acknowledged by Plaintiff as part of that process. (*See, e.g.*, Defs. Ex. 5, Doc. 47-1 at 11–21.) While the "Holler-Classic" logo appears throughout the onboarding documents, there is no document that contains or references an arbitration provision with that entity. So, the argument that the Court should disregard the plain language of the Application of Employment and read "Holler-Classic" as the "Company" referenced in the arbitration provision, instead of "Holler Honda," is not persuasive.

The question then becomes whether Holler Chevrolet, as a non-signatory to the arbitration provision, can compel Plaintiff to arbitration. In *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009), the Supreme Court held that state law governs whether an arbitration clause is enforceable against a non-signatory under the Federal Arbitration Act.[4] Neither side has asserted that anything other than Florida law controls here. To that end, Florida law holds that, because arbitration is based on consent, "a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration," subject to certain exceptions. *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th DCA 2013) (internal quotation marks omitted). Exceptions include: (1) where the underlying proceedings relate to actions allegedly taken by the non-signatory as an agent of a signatory; (2) when the non-signatory is a third party beneficiary of the contract; and (3) under equitable estoppel, whether there is "substantial interdependent and concerted misconduct by the signatory and the non-signatory or when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory." *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004).

When questioned on the signatory issue, Defendants asserted at the hearing that they can invoke the arbitration provision because they are agents of Holler Honda, the signatory to the arbitration provision. Florida courts have "reject[ed] the broad construction of the agency exception . . . which would permit a non-signatory agent to a signatory to invoke arbitration simply because the agency relationship exists." *Id.* Instead, Florida courts have invoked equitable estoppel

---

[4] Pre-*Carlisle*, a number of Eleventh Circuit opinions applied equitable estoppel in the arbitration context without reference to or focus on state law. *See, e.g.*, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). However, a review of Florida law pre-*Carlisle* reveals that state courts found federal law on this issue persuasive in determining whether non-signatories can enforce arbitration provisions with signatories. *See, e.g.*, *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004); *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003).

to allow a non-signatory to compel a signatory to arbitration where the action arose out of or was intimately related to the agreement containing the arbitration provision. *Id.* at 945. As such, signatories are equitably estopped from avoiding arbitration with non-signatories where "the claims stem from the same contractual obligation." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003).

For the equitable estoppel exception to apply, "the claim . . . must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself," which requires a "factually-intense review of the claim." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 647 (Fla. 3d DCA 2014) (internal quotation marks omitted). On this point, *Giller v. Cafeteria of South Beach, Ltd.*, 967 So. 2d 240 (Fla. 3d DCA 2007), is a helpful reference point. In *Giller*, the court found an "indisputable nexus" between the claims for professional malpractice brought by a restaurant owner, who was the signatory, against an architect, who was the non-signatory, based on the existence of an arbitration clause in an architectural services contract with the architect's firm. *Id.* at 242. Even though the suit did not assert a breach of contract claim, the restaurant was estopped from repudiating the arbitration agreement because "[o]ne cannot both take advantage of contract provisions to seek to impose liability on an individual professional and at the same time avoid another contract term or provision for which it has no use." *Id.*

One district court has taken these principles and applied them to the employment context. In *Garcia v. Mason Contract Products, LLC*, the court held that an employee was estopped from avoiding an arbitration provision in his employment agreement, even where the agreement was not with the entity that employed him. No. 08-23103-CIV, 2010 WL 520805, at *5 (S.D. Fla. Feb. 9, 2010). In *Garcia*, the plaintiff brought an FLSA action against Mason Contract Products, the

entity that employed the plaintiff. *Id.* at *1. The plaintiff signed an employment agreement containing an arbitration provision around the time Mason hired him. *Id.* at *1–2. However, the employment agreement failed to specify that Mason was the employer; instead, the parties to the agreement were the plaintiff and MRC Industries, Inc., an affiliated company of Mason. *Id.* at *2. Mason and MRC Industries were not parent/subsidiary entities, but rather, were affiliated through common ownership and control, like Holler Honda and Holler Chevrolet. *Id.* The Court in *Garcia*, relying on Eleventh Circuit precedent,[5] found that equitable estoppel prevented the plaintiff from avoiding the arbitration provision. *Id.* at *5. Even though the plaintiff's claim did not directly arise from the arbitration agreement with MRC Industries, "his claim presume[d] the existence of an employment relationship" and the employment relationship was formed only after the plaintiff signed the agreement. *Id.* Therefore, the plaintiff in *Garcia* was estopped from avoiding the arbitration provision. *Id.* at *6.

Plaintiff's claims in this case, although statutory in nature, are related to the employment relationship memorialized after Plaintiff submitted his Application for Employment, which contained the arbitration provision. Plaintiff brings claims for unpaid wages and retaliation claims that arise solely out of the existence of the employee/employer relationship. Thus, as in *Garcia*, Plaintiff's claims presume the existence of an employment relationship, and that relationship was not formed until after Plaintiff signed the arbitration provision as part of his Application for Employment. As Mr. Hamner testified, Holler Chevrolet and Holler Honda are affiliated by common ownership and control. Moreover, while neither party pointed to this provision, the Applicant Statement and Agreement also provides:

---

[5] This case was authored post-*Carlisle*, and relied on several Eleventh Circuit cases, including *MS Dealer*, upon which Florida courts have relied to compel a signatory to arbitration with a non-signatory. (*See* n.4, *supra*.)

> I hereby authorize the Company with which I have applied for employment to share my Application for Employment with other affiliated companies/employers, and **hereby agree that all terms, conditions and/or agreements contained in this Applicant's Statement and Agreement, or any other documents pertaining to my application for employment, shall be enforceable by me and by such other companies/ employers (including their managers, employees and agents),** <u>**even though I have not signed a separate Applicant's Statement and Agreement for those other companies/employers.**</u>

(Defs. Ex. 1, Doc. 47-1 at 5) (bolded and underlined emphasis added). Therefore, it appears that the arbitration provision contained in the Applicant Statement and Agreement is enforceable by Holler Chevrolet as an affiliated company of Holler Honda. Although the arbitration provision could have been much more clearly drafted to avoid these gymnastics, the undersigned ultimately finds that equitable estoppel operates to allow Defendant Holler Chevrolet, as a non-signatory, to enforce the arbitration provision.

### 2. Holler Honda did not terminate Plaintiff's employment, so the arbitration agreement is still enforceable by Holler Chevrolet.

The parties contest whether Plaintiff was terminated or transferred in December 2014. Plaintiff alleges that he worked for Holler Honda through December 2014, when Holler Honda terminated his employment due to Plaintiff's poor performance as a car salesman there. (*Id.* ¶¶ 34–35.) On the other hand, Mr. Collins testified that Plaintiff was transferred to the Holler Driver's Mart location because it would be a better fit for Plaintiff. Plaintiff argues that once he was terminated by Holler Honda in December 2014, the arbitration provision was rendered void. Thereafter, because Plaintiff executed a new Employment Agreement with Holler Chevrolet that provides for choice of law in Florida courts, he cannot be compelled to arbitration.[6]

---

[6] This is Plaintiff's sole argument on this issue; therefore, the Court does not engage in a detailed analysis of Florida contractual principles relating to whether the later-signed Employment Agreement superseded the arbitration provision in the Applicant's Statement and Agreement.

Because the Court finds that Plaintiff was not terminated, but rather, was transferred, the arbitration provision remains enforceable. Plaintiff did not fill out a new employment application after his transfer to Holler Chevrolet. Rather, on January 2, 2015, a "Change of Status" form indicated that Plaintiff was transferring from Holler Honda to the Holler Chevrolet Driver's Mart location. (Defs. Ex. 8, Doc. 47-1 at 31.) Later, a February 2, 2015, form filled out by Mr. Collins, and which appears to have been signed by Plaintiff, also indicated Plaintiff was transferring to the Driver's Mart location. (Defs. Ex. 10, Doc. 47-1 at 33.) Plaintiff did not testify at the hearing that this Change of Status form was inauthentic, but Plaintiff asserted he did not request a transfer at any point. A February 2, 2015, email from Phil Collins to Wendy Allen, in Human Resources, also indicated Plaintiff was transferring. (Defs. Ex. 9, Doc. 47-1 at 32.)

Defendants also introduced evidence that Plaintiff did not receive pay between January 11, 2015 and February 7, 2015. (Defs. Ex. 19, Doc. 47-2 at 12–13). Plaintiff testified this was because he was terminated, while Mr. Collins testified that this was because after Plaintiff's transfer, he failed to start work at the Driver's Mart location on the date he was expected to, resulting in several weeks of no pay.

Plaintiff then points to the "Addendum to New Hire Sales Person," ("New Hire Addendum") attached to the Plaintiff's Employment Agreement, as evidence that he was a "new hire" and was not a transfer. (Doc. 26-3 at 4.) This New Hire Addendum allowed Plaintiff to be paid at the higher rate of $10.00 per hour for the first ninety days of employment. *Id.* Plaintiff argues that because Plaintiff was paid at the higher "new hire" rate, he was not a transferred employee. However, Defendant introduced credible testimony, through Mr. Collins, which demonstrated that Plaintiff was given that pay plan to allow him to adjust to the new working environment and structure at Holler Chevrolet. Transferred employees routinely sign this

document, which Mr. Collins extends as a courtesy to the employee, which Plaintiff chose to accept. Overall, Defendants were able to rebut with credible evidence and testimony Plaintiff's argument that he was terminated.

Because the Court concludes that the evidence demonstrated that Plaintiff was transferred, the arbitration provision remained in effect. The Applicant Statement and Agreement provides the following language regarding how changes could be made to its terms:

> **No implied, oral or written agreements contrary to the express language of this agreement are valid, and no changes to the arbitration agreement and/or my at will employment status may be made, unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation).** . . . This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company.

(Defs. Ex. 1, Doc. 47-1 at 5) (bolded emphasis added). The Employment Agreement Plaintiff executed was signed by Mr. Collins, who was the General Manager of Holler Driver's Mart, not the "President of the Company," as contemplated above. (Pl. Ex. 3, Doc. 46-2 at 67–69.) Further, neither party contends that the arbitration provision was modified. Ultimately, in light of the evidence presented at the hearing, for purposes of this Motion, the undersigned finds that Plaintiff was transferred, and therefore, the arbitration provision in Applicant Statement and Agreement is enforceable by Holler Chevrolet.

### B. Motion to Dismiss

Defendant moves to dismiss Claims 1 and 2 against Defendants, Audi North Orlando, Classic Honda, Classic Mazda, Mazda Lakeland, Holler Hyundai, Genesis North Orlando,

Driver's Mart Winter Park, and Driver's Mart Sanford for lack of standing. (Doc. 29 at 2.)[7] Defendant asserts that Holler Chevrolet was Plaintiff's only employer, and thus, there are no allegations that they have harmed Plaintiff. (*Id.* at 12.) Plaintiff does not address or dispute that he lacks standing as to these Defendants and does not appear to contest their dismissal. (*See* Doc. 34.) Therefore, I respectfully recommend that the Court dismiss Defendants Audi North Orlando, Classic Honda, Classic Mazda, Mazda Lakeland, Holler Hyundai, Genesis North Orlando, Driver's Mart Winter Park, and Driver's Mart Sanford for lack of standing.

### III. RECOMMEDATION

Upon considering of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** Defendants' Motion to Compel Arbitration and to Dismiss (Doc. 29) as follows:
    a. **DISMISS** Defendants Audi North Orlando, Classic Honda, Holler Honda, Classic Mazda, Mazda Lakeland, Holler Hyundai, Genesis North Orlando, Driver's Mart Winter Park, and Driver's Mart Sanford from this action;
    b. **ORDER** Plaintiff, Shih-Yi Li, and Defendant, Roger Holler Chevrolet Co., to arbitration;
2. **STAY** the action pursuant to 9 U.S.C. § 3 and **DIRECT** the parties to file interim status reports advising the Court of the progress of arbitration.

### NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

---

[7] As stated in note 1 *supra*, the Court assumes that Holler Honda is not a Defendant to this action.

- 12 -

legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

      Recommended in Orlando, Florida on March 13, 2020.

                                    EMBRY J. KIDD
                          UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record