IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIH-YI LI,                                )
                                           )
    Plaintiff,                             )   Case No.:
                                           )   6:19-cv-1249-Orl-31TBS
vs.                                        )
                                           )
ROGER HOLLER CHEVROLET CO.,                )
                                           )
    Defendant.                             )
_____)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT's MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, SHIH-YI LI ("Li"), pursuant to Fed. R. Civ. P. 56, hereby submits the following Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment:

    I.    <u>Relevant Facts</u>

Li was hired to work at Holler Chevrolet in or around September 2013 as a car sales associate. In or around December 2014, Li's supervisor terminated his employment, citing poor performance as the basis for the termination. Li requested written confirmation of the termination from his supervisor and human resources, but was denied. (Pl. Aff. ¶3)[1] On or around February 4, 2015, Li interviewed at Holler Driver's Mart ("Driver's Mart") with Phil Collins ("Collins"), general manager, and Patrick Pimentel, sales manager, and was hired as a car sales associate. The parties executed

---

[1] References to depositions are designated by the name of the deponent and the page and line number where the cited information is stated. References to Li's affidavit are designated by Pl. Aff. ¶__ followed by the paragraph where the cited information is stated.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 2 of 13 PageID 1099

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **2** of **13**

an employment agreement, which governed Li's employment at Driver's Mart. (Pl. Aff. ¶4; Ex. 1)

Contrary to Driver's Mart's continued assertion that Li was "transferred" to another dealership, he was in fact terminated from Holler Honda. He was not paid for any time purportedly worked between the date of his termination in December 2014 and when he was hired at Driver's Mart several months later. Li never received the paychecks produced by Driver's Mart dated during that interim period; and they were addressed to his previous address. (Ex. 6) Li has calculated his pay for 2014 and 2015 and those sums were not included in the W-2 forms provided to him by Holler Honda and/or Driver's Mart. Li did not receive a copy of the change of status form purporting to transfer him from one dealership to another until the instant lawsuit was filed and denies that it is his signature on the document. Li vehemently denies that he worked for any of the Holler dealerships between his termination and rehire date. (Li 52, lines 5-7; Pl. Aff. ¶5)

After being hired at Driver's Mart, Li was paid initially $10.00 per hour. After approximately 90 days, Li was paid in accord with a pay plan established by Driver's Mart. The plan provided that Li would be paid a draw equal to minimum wage ($8.05 per hour) bi-weekly and a monthly "**commission**/bonus credit" paid monthly LESS any draw received during the month.[2] Li was paid a higher commission per car if he sold increased numbers of cars per month. If the commission was less than the draw for the month, Driver's Mart put Li "in the bucket" and established a deficiency for the following month. When he was considered "in the bucket," the Defendant carried the deficit on to

---

[2] Driver's Mart's attempt to characterize the "commission/bonus credit" (as identified on the pay plan drafted by Driver's Mart as merely a "bonus" is disingenuous and self-serving.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 3 of 13 PageID 1100

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **3** of **13**

the next month and deducted it from his pay, as the draw money was considered a "loan" from the Defendant to Li. (Li 12-13, 54, lines 11-16; Pl. Aff. ¶6; Ex. 1)  Collins admitted as much in his deposition:

> Q:  Sure. Okay. Do you know what it means to be in the bucket?
>
> A:  Yes.
>
> Q:  What does that mean to you?
>
> A:  If a salesperson does not sell enough cars, he potentially will have, you know, a deficit going into the next month.
>
> Q:  When you say, "if he doesn't sell enough cars," what do you mean by that?
>
> A:  Well they're paid on how many cars they sell and they are also paid an amount—a draw that is equal to minimum wage. So if they, you know, they're, you know, in order to receive an additional check on their volume bonus they would have to sell enough cars that would equal or exceed the amount that they were paid on their weekly check or their bi-weekly check.
> ***
>
> Q:  Well, say they sold zero cars, and then they received their…bi-weekly check for minimum wage, how would there be a deficit there? Assuming they sold no cars at all the entire month, that they worked 50 hours each week?
>
> A:  Because that pay is based on a draw, which is considered an advance against their, you know, their future bonus, their future volume notice.
>
> Q:  Okay. So if someone sold no cars at all, they worked 50 hours a week, they would have a negative balance going into the following month?
>
> A:  They would have- I don't know if a negative balance is correct or not, but they would be in a deficit, so that- that's what we refer to as in the bucket.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 4 of 13 PageID 1101

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **4** of **13**

(Collins 14, lines 22-25, 15, lines 1-15. 16, lines 9-24)

Throughout Li's employment at Driver's Mart, the company routinely advertised and otherwise informed customers, falsely, that the salespeople were not paid on a commission basis. This claim, repeated countless times, is false, as the Pay Plan clearly designates the payment as a "commission/bonus." The company also consistently engaged in a "bait and switch" scheme wherein it would advertise certain vehicles that it did not have possession of, and never did have possession of. There may have been situations were a vehicle was unavailable for a legitimate reason, such as being in the shop or on a test drive, but there were many times that the vehicle simply was not purchased by Driver's Mart. Management instead directed its salespeople to attempt to sell the potential customer(s) a higher priced vehicle than the one they came to purchase after seeing it advertised for a lower price. Li complained to management on multiple occasions about both of these practices, which amounts to fraud against the public. The "bait and switch" practice was known by the community and abroad, as evidenced by the online reviews of the dealership. (Pl. Aff. ¶7; Ex. 2) The practice is continuing to this day, as evidenced by a text message conversation between Li and a former co-worker who is still employed at Driver's Mart. (Ex. 3)

Regarding "the Civic" referenced in Defendant's Motion for Summary Judgment, Li's customer came to purchase the car that he identified by car ID number and the price of $4998, and stated that it was advertised online. Li researched the car and the company computer system and was told by senior sales colleague Alberto Duneas that the car was never delivered to Driver's Mart. (Pl. Aff. ¶8)

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 5 of 13 PageID 1102

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **5** of **13**

On or about October 15, 2018, Li informed his supervisor and Collins that he was not in good health and that he would soon need to take a leave of absence to take care of his health. He further stated that his private medical information may be compromised as the documents were stored in an unlocked drawer. Collins agreed that he could indicate a reason other than medical leave on his request for leave. (Pl. Aff. ¶9)

On or about November 8, 2018, Li requested in writing medical leave of absence from work from November 20 through December 10, 2018. (Pl. Aff. ¶10; Ex. 4) Li was entitled to the medical leave pursuant to the Family Medical Leave Act (FMLA). At the time, he was under doctor's treatment for severe high blood pressure and dental issues from two broken teeth. Li explained to his supervisor that the reason for the request for leave was not just to move, but also because of the medical issues described above. Li was unable to communicate with customers due to his medical issues and would be unable to sell cars. Li's supervisor denied the request and directed Li to report to work. (Pl. Aff. ¶10; Ghai 24, lines 22-25, 25, lines 1-25, 26, lines 1-4) Li returned to work on November 16, 2018, and was told that the Defendant terminated his employment. His supervisor directed him to gather his things and escorted him from the property. (Pl. Aff. ¶11)

Once again, Li asked for written confirmation of his termination and was denied. He went to company headquarters in Orlando to retrieve the same and was denied entrance into the building. (Pl. Aff. ¶12)

The Defendant claims Li was terminated for job abandonment, which is incorrect. He went to work and completed his duties until he requested legitimate FMLA leave.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 6 of 13 PageID 1103

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **6** of **13**

(Pl. Aff. ¶13)   The Defendant's purported reason and date of the termination has changed multiple times over the course of this litigation. In a letter from Frank Hamner, the Defendant's attorney, dated May 15, 2019, Hamner indicated that Li "voluntarily resigned" on October 31, 2018. (Ex. 7) The Defendant's Payroll Master Report shows that Li was terminated on October 24, 2018, which is seven days prior to Collins' testimony that he terminated Li on October 31, 2018. (Ex. 5; Collins 29, lines 3-7) The change of status report that indicates Li was terminated does not have Li's signature and was not presented to Li until discovery in this litigation. (Pl. Aff. ¶14)

In support of its Motion for Summary Judgment, the Defendant cites to an Associate Counseling Report dated January 15, 2018, indicating that Li was absent from work for three days without authorization. Li refused to sign the document because it was inaccurate. Li reported to work on October 12, had approved leave of absence on October 13, and was scheduled off on October 14. Notably, the document presented to Li in 2018 did not include the dates, but the version presented to the Court included dates that were apparently added after the fact. (Pl. Aff. ¶15)

Further, Li denies ever receiving verbal counseling from his supervisor regarding requesting vacation at the "last minute." (Pl. Aff. ¶16)

  II.   <u>Memorandum of Law</u>

   a. <u>Standard for Summary Judgment</u>

A party seeking summary judgment must prove that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sledge v. Goodyear Dunlop Tires N. Amer. Ltd.*, 275 F.3d 1014, 1019 (11th Cir. 2001); *see, also,* Fed. R. Civ. P. 56(c). In determining whether the moving party has met its

Case 6:19-cv-01249-GAP-EJK Document 84 Filed 03/26/21 Page 7 of 13 PageID 1104

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **7** of **13**

burden, the Court must construe "the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Sledge*, at 1019. "All reasonable doubts about the facts should be resolved in favor of the non-movant." *Id.* (internal citations omitted). The elements of proof in a discrimination case were not intended to be "rigid, mechanized, or ritualistic." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). The Plaintiff must merely raise an *inference* of discrimination. *International Board of Teamsters v. U.S.,* 431 U.S 324, 339 (1977); *Meiri v. Dacon*, 759 F.2d 989, 996 (2nd Cir. 1985).

      b. <u>Minimum Wage Under FLSA and Florida Constitution</u>

The Fair Labor Standards Act, 29 U.S.C. §201, <u>et seq.</u>, (FLSA), was created by Congress to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Hogan v. Allstate Insurance Co.*, 361 F.3d 621, 625 (11th Cir. 2004), *citing*, 29 U.S.C. §202(a). The FLSA requires employers to pay employees minimum wage of $7.25 per hour worked during a workweek. 29 U.S.C. §206(a)(1)(C). Any employer who fails to pay minimum wage pursuant to the FLSA is liable to the employee for the unpaid minimum wages and an amount equal to the same as liquidated damages. 29 U.S.C. §216(b).

    Title X, Section 24 of the Florida Constitution states, in relevant part, "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida." Fla. Const. Title X, §24(c). The Florida minimum wage at the relevant times ranged from $8.05 to $8.25. Employees who are not paid in accord with this section of the Constitution may bring a civil action against the employer and recover the unpaid

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 8 of 13 PageID 1105

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **8** of **13**

wages as well as an amount equal to the unpaid wages as liquidated damages. The employer may also face fines up to $1,000 per violation. Fla. Const. Title X, §24(e).

The Defendant's failure to pay Li for all hours worked violates both the FLSA and the Florida Constitution. By placing Li "in the bucket" and creating a deficit for the following month, the Defendant was not paying Li for the hours that he worked, most times in excess of 50 hours per week. The Defendant cannot circumvent the minimum wage laws by arguing that the "commission/bonus" payment took the place of the minimum wage Li was entitled to.

    c. <u>Florida Private Whistleblower Act</u>

To establish a prima facie case under the Florida Whistleblower Act, Fla. Stat. §§448.101, <u>et</u> <u>seq.</u>, (FWA), Li must meet the requisite elements under a Title VII retaliation claim: 1) he engaged in a statutorily protection action; 2) he suffered an adverse employment action; and 3) a causal link between the protected action and the adverse action. *Rice-Lamar v. City of Ft. Lauderdale*, 853 So.2d 1125, 1132 (Fla. 4th DCA 2002); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). The FWA is "remedial in nature and so should be liberally construed." *Jenkins v. Golf Channel*, 714 So.2d 558, 563 (Fla. 5th DCA 1998), *citing, Tampa Electric Co.*, 704 So.2d 605 (Fla. 2nd DCA 1997). Therefore, Courts should construe the statute to include conduct that is against public policy, even if it does not come under the literal terms of the statute. *N.L.R.B. v. Scrivener*, 92 S.Ct. 798, 801-802 (1972). The purpose of the FWA is to protect employees who report employer's violations or "refuse to assist employers who violate laws enacted to protect the public." *Jenkins*, at 563.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 9 of 13 PageID 1106

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **9** of **13**

The FWA creates a cause of action for an employee who has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. §448.102(3). Li objected to, and/or refused to participate in the "bait and switch" practices of the Defendant and the lie that the sales were "commission free" to the public, which are both a violation of Florida's common law fraud. The elements of common law fraud are: 1) a false statement of fact; 2) known by the person making the statement to be false at the time it was made; 3) made for the purpose of inducing another to act in reliance thereon; 4) action by the other person in reliance on the correctness of the statement and 5) resulting damage to the other person. *Gandy v. Trans World Computer Tech. Group,* 787 So. 2d 116, 118 (Fla. 2d DCA 2001), *citing, Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253 (Fla. 2d DCA 1994).

The Defendant knew that certain vehicles were not in their inventory and never had or would be in their inventory. Nonetheless, they advertised these vehicles, in hopes of luring customers (many from hours away) to the dealership, only to find that the vehicle was "unavailable." The Defendant instructed its salespeople to attempt to sell the customer another, more expensive, vehicle instead. These are clearly false statements, known to be false by the Defendant, intended to induce customers to come to the dealership, which resulted in damage to the customer.

Also, by consistently telling customers that their sales were "commission free" is fraud against the public. Li and the other salespeople had a Pay Plan wherein they were paid a commission, per car, based upon how many cars they sold each month. The more cars they sold, the more commission they received per car. The Defendant

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 10 of 13 PageID 1107

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **10** of **13**

developed the Pay Plan and implemented it, knowing that it was false and would induce customers to come to the dealership to purchase vehicles under the belief that the sale was "commission free" when it was not.

Termination of employment is clearly an adverse action. Driver's Mart *now* admits that Li was terminated from his employment. It previously claimed Li voluntarily resigned and it has contradicted itself on multiple occasions in documents and testimony as to when Li was terminated, but they do not deny that he was involuntarily terminated at this stage of the litigation.

Temporal proximity is not the only factor to consider when determining if an adverse action was caused by an employee engaging in a protected activity. Li objected to and/or refused to participate in the fraud upon the public by claiming its sales were "commission free" because he knew they were not "commission free." He also knew that many vehicles that were advertised at a low price by the dealership were not, and never were, in the dealership's possession. And he was directed consistently to attempt to sell the customers that came in to look at these non-existent cars other, more expensive cars. Certainly, the Defendant would not want the public to know that they were being defrauded. A reasonable jury could conclude that the reason the Defendant terminated Li's employment was based upon his objection to and/or refusal to participate in the Defendant's fraud against the public.

    d. <u>Family Medical Leave Act</u>

The Family and Medical Leave Act of 1993, 29 U.S.C. §2601 <u>et seq.</u> (FMLA) was drafted in part to ensure job security for employees who have serious health conditions that prevent them from working for temporary periods of time. 29 U.S.C.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 11 of 13 PageID 1108

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **11** of **13**

§2601(a)(4).  Thus, FMLA grants an "eligible employee" up to twelve weeks of unpaid leave per year in the event of a serious health condition.  29 U.S.C. §2612.  Employees who are denied their rights pursuant to FMLA may file a civil action against their employer.  29 U.S.C. §2617(a).  There are two types of claims available under FMLA: interference claims, where an employee alleges that his employer denied or otherwise interfered with her rights under the act, and retaliation claims, where the employee alleges that his employer discriminated against him for engaging in an activity protected by the act.  *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006), *citing, Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001); 29 U.S.C. §2617.  There are different standards of proof used to establish each claim, despite being based upon the same facts. *Parker v. Hahnemann University Hosp.*, 234 F.Supp.2d 478, 489 (D.N.J. 2002).

To establish a *prima facie* case of interference with one's FMLA rights, the employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit and the employer denied or otherwise interfered with the benefit. *Hurlbert*, at 1293, *citing, Strickland*, at 1207; *Matthews v. Village Center Community Develop. Dist.*, 2006 WL 3422416, *17 (M.D.Fla. 2006), *citing, O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1347, 1353-54 (11th Cir. 2000); *Shamsid-Deen v. Miami-Dade County Circuit Court*, 2006 WL 680548, *2 (S.D.Fla. 2006).  The employer's intent in denying the benefit is irrelevant.  *Id.*  There is no burden shifting in the analysis of an interference claim.  *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); *Allen v. Progress Energy, Inc.*, 2009 U.S. Dist. LEXIS 13228, *4 (M.D. Fla. Feb. 20, 2009).

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 12 of 13 PageID 1109

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **12** of **13**

The Plaintiff has established that he was entitled to the requested leave and that he was denied that leave. He spoke to his supervisor and Collins approximately a month in advance about his health condition and indicated that he would need to take medical leave in the near future. He further explained that the location where the Defendant maintained medical leave requests was unsecure (in an unlocked drawer) and that he did not want his private medical information to be known by other employees. It was agreed at that time that Li could request leave for a different reason in writing other than disclosing his medical condition. Li underwent gum surgery and a denture replacement, which resulted in him being unable to communicate with customers and thus unable to sell cars, which was his primary job duty. At the time of Li's request, he was suffering from two broken teeth, which made it difficult to communicate and is a legitimate basis for medical leave under FMLA.

The Defendant should have granted Li's request for leave. Li's supervisor and Collins, who was the ultimate decision maker, had notice well in advance that Li was going to request medical leave and gave their permission for him to provide an alternative basis for the request for leave based upon privacy concerns over his health condition.

III. Conclusion

WHEREFORE, based upon the foregoing, the Plaintiff respectfully requests that the Court DENY the Defendant's Motion for Summary Judgment and allow the matter to proceed to trial.

Case 6:19-cv-01249-GAP-EJK   Document 84   Filed 03/26/21   Page 13 of 13 PageID 1110

*Li v. Roger Holler Chevrolet Co. et al.*; Case No. 6:19-cv-01249-GAP-EJK; CPLS Matter No. 3573-1
Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment; Page **13** of **13**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 26th day of March, 2021, I forwarded the foregoing document via email upon: Frank Hamner, Frank Hamner, P.A., 1011 N. Wynmore Rd., Winter Park, FL 32789 (fhamner@fahpa.com) and Sherril Columbo, Miguel Morel, Littler Mendelson, P.C., 333 S.E. 2nd Ave., Ste. 2700, Miami, FL 33131 (scolombo@littler.com, mamorel@littler.com).

**CPLS, P.A.**
Attorneys|Consultants|Mediators
201 East Pine Street, Suite 445
Orlando, Florida 32801
(407) 647-7887
(407) 647-5396 Fax
CPLS File No. 3573-1
*Attorneys for Plaintiff*

_____
Melissa C. Mihok, Esq.
Florida Bar No. 555851
mmihok@cplspa.com
courtefiling@cplspa.com